UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN JOSEPH PINCKNEY,

       Plaintiff,

v.

JOSHUA TRAVIGLIA, DARYL
MCCULLOCH, RYAN KIRKPATRICK,
JEREMIAH KRIMM and the CITY OF
LANSING, a Michigan municipal corporation,

       Defendants.

                                           /

Case No.  1:11-CV-290

HON. GORDON J. QUIST

**OPINION**

      Plaintiff, Alan Joseph Pinckney, alleges various federal and state-law claims against Defendants, the City of Lansing and Lansing Police Officers Joshua Traviglia, Daryl McCulloch, Ryan Kirkpatrick, and Jeremiah Krimm, all of which arise out of a September 4, 2010, traffic stop and arrest of Pinckney.  In his First Amended Complaint, Pinckney alleges claims under 42 U.S.C. § 1983 against Officers Traviglia, McCulloch, Kirkpatrick, and Krimm, and Traviglia for use of excessive force and failure to prevent excessive force in violation of Pinckney's Fourth Amendment rights (Counts 1–4); a claim of municipal liability against the City under § 1983 for failure to train and supervise (Count 5); a claim for exemplary damages (Count 6); a state-law claim against the individual officers for assault and battery (Count 7); a claim against the City under the Michigan Freedom of Information Act (Count 8); and claims of false arrest and malicious prosecution in violation of the Fourth Amendment and state law against Officer McCulloch (Counts 9–12).

      The City and Officer McCulloch move for partial summary judgment on Counts 5 and 9–12. The motion is fully briefed and ready for decision.  Although Pinckney requests oral argument, the Court concludes that oral argument is unnecessary for a fully-informed decision.

For the reasons set forth below, the Court will grant the motion and dismiss Counts 5 and 9–12 with prejudice.

## I. FACTS

On September 3, 2010, Pinckney went into Brannigan's—a bar in downtown Lansing, Michigan—to obtain a key from Levi Gregory for the house at 967 Walnut Street in Lansing. Pinckney had been living with Gregory at 967 Walnut Street during the previous four or five months because Pinckney was estranged from his wife, Michelle. A Personal Protection Order (PPO) prohibited Pinckney from contacting Michelle. When Pinckney entered Brannigan's, he saw Michelle, who was with Pinckney's sisters and some other people. Pinckney found Gregory and went outside to wait for him. As Pinckney was waiting for Gregory, Michelle came outside and announced to several people nearby that she had a PPO against Pinckney. Pinckney walked away and called Gregory on his cell phone, and they agreed to meet at another bar called the Wild Beaver.

Michelle and Pinckney's sisters followed Pinckney and Gregory to the Wild Beaver. At some point later that night, Pinckney and Michelle ended up together outside of the Wild Beaver and Michelle was crying as they spoke. Officer McCulloch, who was on duty, saw Michelle and stopped his patrol car to ask if there was a problem. Michelle denied that anything was wrong, and Officer McCulloch left the scene.

Pinckney and Gregory walked home between 2:00 and 3:00 a.m. While they were walking, Michelle began to call Pinckney, apparently because she wanted to have sex with him. Michelle kept calling Pinckney after he arrived home, and he eventually agreed to meet her. Pinckney walked to the intersection of Oakland Avenue and Walnut Street, where Michelle was waiting in her car. Pinckney got into the passenger side of the car and Michelle began to drive. Officer McCulloch, who was in the area, followed Michelle and Pinckney. Michelle eventually pulled into a Speedway

2

gas station. Because Michelle was intoxicated, she and Pinckney switched places and Pinckney began to drive.

Officer McCulloch observed Michelle's vehicle pull out of the Speedway station. He followed the vehicle because he recognized Pinckney from the earlier encounter at the Wild Beaver, during which either Pinckney or Michelle had told him that they had been drinking. Officer McCulloch followed the vehicle until it stopped at the corner of North Walnut Street and Oakland Avenue. The vehicle made a right-hand turn onto Oakland Avenue—a four-lane one-way street— into the farthest lane. (12/9/10 Prelim. Examination Tr. at 5–6, Defs.' Br. Supp. Mot. Ex. 3.) Officer McCulloch concluded that this right-hand turn was illegal because the vehicle was required to turn into the closest lane.[1] Officer McCulloch activated the overhead lights of his patrol car to initiate a traffic stop and followed the vehicle after it turned left onto Chestnut Street.

Pinckney pulled over at the next stop sign, exited the vehicle, and ran from the scene. Officer McCulloch followed Pinckney but eventually lost him. Pinckney hid in a garbage container for a short time and then surrendered to the police. As Pinckney walked toward the police officers, they told him to put his knees on the ground. Pinckney alleges that as he lowered himself to the ground, an officer tackled him from behind, causing him to fall face-first into the pavement, and that an officer put a knee in his back and another officer put a knee on his head. Pinckney further alleges that after he was handcuffed, Officer Traviglia hit him in the back of the head with a closed fist four to five times. (Pinckney Dep. at 120, Defs.' Br. Supp. Mot. Ex.1.)

Following the arrest, Officer McCulloch wrote two tickets against Pinckney for civil infractions. Ticket L128536 addressed violations of two City ordinances resulting from an improper

---

[1] Officer McCulloch determined that the right-hand turn was in violation of Section 647(1)(a) of the Michigan Motor Vehicle Code, which provides that "[b]oth the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." M.C.L.A § 257.647(1)(a).

3

turn and driving with an expired license. Ticket L128537 charged Pinckney with no proof of insurance, failure to display a valid license, and failure to present a valid registration, in violation of three City ordinances.

Ticket L128537 was handled in the 54A District Court as a civil infraction case. In the civil infraction case, Pinckney filed a motion to suppress and a motion for summary disposition. Following a suppression hearing on February 10, 2011, District Court Judge Frank J. DeLuca denied both motions. Thereafter, Pinckney resolved the civil infraction case by admitting responsibility to the charge of no proof of insurance and to an added charge of failure to yield to an emergency vehicle.

Ticket L128536 was voided but resulted in a separate felony case (the felony case). Initially, a misdemeanor warrant request was issued for four misdemeanor charges, but the Ingham County Prosecutor subsequently requested a felony complaint for assaulting/resisting/obstructing a police officer in violation of M.C.L.A. § 750.81d(1) and for operating a motor vehicle with a suspended license in violation of M.C.L.A. § 257.904(3)(a). A preliminary examination was held on December 9, 2010, before District Judge DeLuca, following which Pinckney was bound over for trial on the charges. Pinckney filed a motion to suppress in the Ingham County Circuit Court challenging probable cause for the traffic stop. Ingham County Circuit Judge Rosemarie E. Aquilina granted the motion on July 29, 2011. Thereafter, on motion of the prosecutor, the court entered an order of nolle prosequi and the felony case was dismissed without prejudice.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. DISCUSSION

**A.     Count 5 – Claim Against the City for Municipal Liability**

Pinckney alleges in Count 5 of his First Amended Complaint that the City had a policy of failing to train its police officers in the proper use of force and that the City's failure to train amounted to deliberate indifference to the constitutional rights of individuals such as Pinckney. The City contends that it is entitled to summary judgment on this claim because Pinckney cannot show that the City had a policy of inadequate training or supervision or a custom of tolerating or acquiescing in the use of excessive force by its police officers.

A municipality such as the City cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 691–92, 98 S. Ct. 2018, 2036 (1978). Instead, to hold a municipality liable under § 1983, the plaintiff must prove that the unconstitutional acts of the individual defendants are the result of a municipal policy or custom. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (citing *Monell*, 436 U.S. at 690–91, 98 S. Ct. at 2036). The policy or custom must be the moving force behind the constitutional injury, and the plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Doe v. Claiborne*

*Cnty.*, 103 F.3d 495, 508–09 (6th Cir. 1996); *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). Moreover, the plaintiff must demonstrate that the moving force resulted from "*deliberate* conduct." *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997) (emphasis in original). Where the plaintiff alleges a policy of inaction as "deliberate conduct," the plaintiff must show that the municipality's failure to act constitutes "deliberate indifference" to the plaintiff's constitutional rights. *Id.* at 407, 117 S. Ct. at 1390. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410, 117 S. Ct. at 1391.

Pinckney contends that the actions of Officers Traviglia, McCulloch, Kirkpatrick, and Krimm involving use of excessive force can be attributed to the City's policy of inadequate training or supervision. In particular, Pinckney alleges that the City "failed to provide or require sufficient training on responding to traffic stops where drivers flee on foot and the appropriate use of force." (1st Am. Compl. ¶ 91.) Pinckney further alleges that the Defendant-Officers' use of excessive force on him "was pursuant to a policy adopted de facto by the [City] based upon numerous similar events." (*Id.* ¶ 95.) As support for this alleged policy, Pinckney cites a number of prior incidents involving the use of force. (*Id.* ¶ 95.a.–i.)

To establish a failure to train or supervise claim, a plaintiff must show: "(1) 'that a training program is inadequate to the tasks that the officers must perform'; (2) 'that the inadequacy is the result of the [City's] deliberate indifference'; and (3) 'that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury.'" *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)). The fact that a municipality could have provided more or better training is irrelevant to a failure to train claim. *See Lewis v. City of Irvine*, 899 F.2d 41, 45 (6th Cir. 1990) (citing *City of Canton v. Harris*, 498 U.S. 378, 391, 109

6

S. Ct. 1197, 1206 (1989)). "'Deliberate indifference' . . . does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious deliberate indifference to [a constitutional violation.]" *Doe*, 103 F.3d at 508.

In support of its motion, the City submits evidence that it has adopted a use of force policy that describes the circumstances in which officers are permitted to use deadly force and prescribes the circumstances for use of non-deadly force along the force continuum. (City of Lansing Police Dep't Policy No. 600-7, Defs.' Br. Supp. Mot. Ex. 11.) The City's evidence also shows that as part of its hiring practices, all candidates must be certified by the Michigan Commission on Law Enforcement Standards. (City of Lansing Police Dep't Policy No. 300-1, Defs.' Br. Supp. Mot. Ex. 12.) The City's policies also include a policy governing training of Lansing Police Department personnel. (City of Lansing Police Dep't Policy No. 300-4, Defs.' Br. Supp. Mot. Ex. 12.) Finally, the City has submitted training records for Officers Krimm, Kirkpatrick, and McCulloch, showing that they participated in the Lansing Police Department's ongoing training programs. (Defs.' Br. Supp. Mot. Ex. 13.) Pinckney offers no evidence in response to the City's motion to show that Officers Krimm, Kirkpatrick, McCulloch, and Traviglia had received no training in the use of force or that, if they lacked such training, the City was aware of this fact. Nor does Pinckney suggest that Officers Krimm, Kirkpatrick, and McCulloch were unfamiliar with the Lansing Police Department's use of force policy. *See Plinton*, 540 F.3d at 464.

As noted above, Pinckney relies on nine previous incidents involving the alleged use of excessive force by the City's police officers as support for his failure to train claim. Regarding failure to train claims, the Supreme Court has observed that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011). Accordingly, "[a] pattern of similar

constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360 (internal quotation marks and citation omitted). In *Connick*, the plaintiff, who had been wrongfully convicted and incarcerated for eighteen years, alleged that the district attorney's office violated his rights by failing to turn over exculpatory evidence that should have been turned over pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). In particular, the plaintiff alleged that the assistant prosecutors failed to turn over a blood-stained swatch of fabric and a crime lab report. The plaintiff alleged failure to train as a theory of liability against the district attorney's office and, in support of that claim, noted that Louisiana courts had overturned four convictions in the preceding ten-year period on the basis of *Brady* violations by prosecutors in the defendant's office. The Court held that such evidence was insufficient to establish deliberate indifference, however, because "[n]one of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind." *Id.* at 1360. The Court observed that "[b]ecause those incidents are not similar to the violation at issue here, they could not have put [the defendant] on notice that specific training was necessary to avoid this constitutional violation." *Id.* (footnote omitted).

In the instant case, setting aside that Pinckney relies solely upon the allegations of his pleading rather than upon evidentiary materials in responding to the City's motion for summary judgment, *see Leonard v. Robinson*, 477 F.3d 347, 353–54 (6th Cir. 2007) ("The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations."), the nine incidents Pinckney describes in his First Amended Complaint do not establish a prior pattern of similar conduct. None of those incidents involved the use of force under similar circumstances that would have put the City on notice that its training program was inadequate. For example, two incidents involved the use of a "flash bang

8

distraction device," (1st Am. Compl. ¶¶ 95d. & i.); one incident involved the use of an electric stun device, (*id.* ¶ 95e.); one incident involved the use of deadly force, (*id.* ¶ 95g.); and none of the incidents involved the use of force on a fleeing suspect following a traffic stop.

Pinckney contends that his allegations establish deliberate indifference based on the City's failure to act in response to repeated complaints of constitutional violations by its police officers. As support for this argument, Pinckney cites *Ellis ex rel. Pendergrass v. Cleveland Municipal School District*, 455 F.3d 690 (6th Cir. 2006). The Sixth Circuit stated in *Ellis* that a plaintiff may establish deliberate indifference where the municipality fails to take action "'in response to repeated complaints of constitutional violations by its officers.'" *Id.* at 701 (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). The court noted that the ten reports the plaintiff offered to support her failure to train claim were insufficient to allow a jury to find deliberate indifference because "[w]hile all of the reports document incidents of corporal punishment, only two arguably rise to the level of Pendergrass's alleged abuse." *Id.* Citing *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2006), the court stated that in order to establish deliberate indifference through the reports, the plaintiff would have had to present evidence showing that the two incidents of abuse over two years was an excessive number. *Id.* In *Thomas*, the plaintiffs presented evidence of forty-five prior lawsuits alleging excessive force against the police department, from which the plaintiffs' expert witness drew his conclusion that the police department had an unwritten policy of condoning the use of excessive force. The Sixth Circuit agreed with the district court that the expert's opinion was conclusory because the expert failed to show how the number of excessive force complaints against the Chattanooga Police Department compared with the number of complaints against similarly-sized cities or cities with a similarly-sized police force. *See id.* at 430-31. As in *Thomas*, Pinckney offers nothing more than raw numbers of excessive force complaints against the City without providing any sound basis for concluding that nine incidents alleging the use of excessive force over a nine-

9

year period is unusual for a municipality the size of the City or with a police force of similar size. Therefore, Pinckney has failed to present sufficient evidence to establish his claim against the City.

**B.     Counts 9–12 (False Arrest and Malicious Prosecution)**

Officer McCulloch contends that Pinckney's Fourth Amendment and state-law claims for malicious prosecution and false arrest alleged against him in Counts 9 through 12 should be dismissed for several reasons. First, with regard to the false arrest claims, Officer McCulloch argues that he is entitled to summary judgment because he had probable cause to believe that a traffic violation had occurred and thus had probable cause to arrest Pinckney. Second, Officer McCulloch argues that he is entitled to summary judgment on Pinckney's malicious prosecution claims because Pinckney cannot demonstrate that the circuit court felony proceedings terminated in his favor. Finally, Officer McCulloch argues that Pinckney's false arrest and malicious prosecution claims are subject to dismissal because the doctrine of collateral estoppel, or issue preclusion, precludes Pinckney from relitigating the issue of probable cause. The Court concludes that the doctrine of issue preclusion applies to bar Pinckney's false arrest and malicious prosecution claims. Therefore, the Court need not address Officer McCulloch's first two arguments.[2]

A lack of probable cause for the prosecution is an essential element of malicious prosecution claims under both the Fourth Amendment and Michigan law. *See Sykes v. Anderson*, 625 F.3d 294,

---

[2] Officer McCulloch contends that Pinckney cannot show that the circuit court felony proceedings terminated in his favor because the case was dismissed on the prosecutor's motion of *nolle prosequi*. Officer McCulloch further contends that because such a dismissal is without prejudice and does not preclude future prosecution for the same offense, it cannot satisfy the requirement that the proceeding terminated in Pinckney's favor. Moreover, Officer McCulloch notes, Pinckney fails to cite any authority for the proposition that a dismissal of a criminal proceeding on a *nolle prosequi* can constitute a favorable termination. Although the Court need not address the issue, the Court's own research discloses case law from both the Sixth Circuit and Michigan courts suggesting that a *nolle prosequi* can constitute a favorable termination. *See McGuire v. City of Royal Oak*, No. 05-40185, 2006 WL 3741898, at *9 (E.D. Mich. Dec. 15, 2006) ("*Nolle prosequi* is a sufficient disposition to support a claim for malicious prosecution, it does not have to equate to acquittal or a finding of innocence, only termination in the defendant's favor." (citing *White v. Rockafellow*, No. 98-1242, 1999 WL 283905 (6th Cir. Apr. 27, 1999), and *Phiscator v. Rice*, 147 Mich. 411, 411–12, 110 N.W. 1095, 1095 (1907))); *Gibson v. Total Petroleum, Inc.*, No. 215665, 2001 WL 717445 (Mich. Ct. App. Mar. 13, 2001) (per curiam) (affirming the trial court's denial of summary disposition on the plaintiff's malicious prosecution claim where the case was dismissed on *nolle prosequi*).

10

308 (6th Cir. 2010) (noting that in a Fourth Amendment malicious prosecution claim, "the plaintiff must show that there was a lack of probable cause for the criminal prosecution"); *Rivers v. Ex-Cell-O Corp.*, 100 Mich. App. 824, 832, 300 N.W.2d 420, 424 (1980) (listing "absence of probable cause for the criminal proceeding" as an element of malicious prosecution). Likewise, in order to prevail on a false arrest claim under both § 1983 and Michigan law, a plaintiff must show that his arrest was not supported by probable cause. *See Horacek v. Neph*, 466 F. App'x 508, 510 (6th Cir. 2012) ("To prevail on a false arrest or imprisonment claim under § 1983 and Michigan law, a plaintiff must prove that his arrest was not supported by probable cause."). As Judge Aquilina observed in ruling on Pinckney's motion to suppress in the circuit court case, the pivotal issue to the validity of the criminal charges was whether Officer McCulloch had probable cause to stop Pinckney for a traffic violation. (Pl.'s Resp. Br. Ex. 2.)

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Mich.*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Because the state-court proceedings occurred in Michigan, the Court applies Michigan law. Under Michigan law, collateral estoppel has three elements: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *See Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3, 429 N.W.2d 169, 171 n.3 (1988). An issue is "actually litigated" if the party opposing estoppel "had a full and fair opportunity to litigate the issue." *People v. Gates*, 434 Mich. 146, 156–57, 452 N.W.2d 627, 631 (1990). Moreover, Michigan law permits "crossover estoppel" between civil and criminal proceedings. *Webb v. City of Taylor*, No. 236153, 2002 WL 31947931, at *3 (Mich. Ct. App. Dec. 3, 2002) (per curiam) (citing *Barrow v. Pritchard*, 235 Mich. App. 478, 481, 597 N.W.2d 853, 856 (1999)).

11

Officer McCulloch argues two bases for applying issue preclusion. First, he contends that Judge DeLuca determined the issue of probable cause in the preliminary examination in the felony case. Next, he contends that Judge DeLuca found that Officer McCulloch had probable cause to stop Pinckney in the suppression hearing in the civil infraction case. Pinckney responds that Judge Aquilina was the last, highest court to determine the issue of probable cause, and she determined in his favor that Officer McCulloch lacked probable cause. Thus, Pinckney argues, there is no need to relitigate the issue of probable cause because it has already been decided in his favor.

### 1. The Felony Case

Neither Officer McCulloch nor Pinckney can benefit from the probable cause determinations in the criminal case. As for Judge DeLuca's ruling at the preliminary examination, Officer McCulloch is correct that such rulings are generally entitled to preclusive effect on the issue of probable cause. In particular, the Sixth Circuit has held that "where a state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Coogan v. City of Wixom*, 820 F.2d 170, 174–75 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001); *see also Webb*, 2002 WL 31947931, at *3–4 (holding that collateral estoppel precludes a plaintiff in a civil case from relitigating issues addressed in previous criminal proceedings). The problem with the use of Judge DeLuca's probable cause ruling as a basis for issue preclusion in this case, however, is that Judge Aquilina, who had the last word on the issue, found that Officer McCulloch lacked probable cause for the traffic stop. As such, Officer McCulloch cannot claim the benefit of Judge DeLuca's preliminary examination ruling. *See Bourgeois v. Strawn*, 452 F. Supp. 2d 696, 708 (E.D. Mich. 2006) (holding that the defendant could not "benefit from the state district court's finding of probable cause because it was overturned by the circuit court judge when he quashed the

12

information. If there was a 'final judgment' in the state court, it was made by the last court to address the matter, not the first.").

On the other hand, Pinckney cannot claim the benefit of Judge Aquilina's probable cause ruling. In arguing that the issue of probable cause has already been determined, Pinckney seeks to use the ruling offensively against Officer McCulloch. However, both the Sixth Circuit and Michigan courts have held that plaintiffs in civil actions against police officers cannot invoke collateral estoppel offensively to preclude re-litigation of issues previously determined in a prior criminal proceeding because the police officers were not parties to the criminal proceeding. In *Burda Brothers, Inc. v. Walsh*, 22 F. App'x 430 (6th Cir. 2001), the Sixth Circuit wrote:

> This court has twice rejected an attempt to use collateral estoppel offensively against a defendant officer in a § 1983 action because the officer was not party to or in privity with a party to the earlier action. *See Kegler v. City of Livonia*, No. 97-2206, 1999 WL 133110 (6th Cir. Feb. 23, 1999) (unpublished decision), *cert. denied*, 527 U.S. 1037, 119 S. Ct. 2396, 144 L.Ed.2d 796 (1999); *Wallace v. Mamula*, 93-3603, 1994 WL 389197 (6th Cir. Jul. 26, 1994) (unpublished decision). Since the defendants, sued here in their individual capacities, did not have a personal stake in the outcome of the earlier proceeding, plaintiffs may not use collateral estoppel offensively to preclude the relitigation of the validity of the search warrant executed on June 22, 1995.

*Id.* at 430 (citations omitted). Similarly, the Michigan Court of Appeals has held that collateral estoppel may not be used offensively in these circumstances:

> In the present case, it is clear that none of the defendants were parties to either the criminal proceeding or the forfeiture proceeding. Although defendants may have been *witnesses* in those prior proceedings, they had no right to make defense, or control the proceedings, and to appeal from the judgment, in either of the previous cases. Accordingly, the doctrine of collateral estoppel did not require the circuit court to apply the earlier holding of the district and circuit courts regarding the validity of the search warrant.

*Brown v. Wassus*, No. 226469, 2002 WL 483545, at *2 (Mich. Ct. App. Mar. 22, 2002) (per curiam). Similarly, in the instant case Officer McCulloch was neither a party in, nor in privity with, a party to the felony case. Pinckney is thus precluded from using Judge Aquilina's prior ruling against

13

Officer McCulloch.

### 2. The Civil Infraction Case

Judge DeLuca's finding of probable cause in the civil infraction case was a separate determination unrelated to the felony case. Judge DeLuca determined the issue after Pinckney filed a motion to suppress and a motion for summary disposition in that case. Judge DeLuca held a full evidentiary hearing on the motions and denied them at the conclusion of the hearing. Thus, the issue was actually litigated. Moreover, the issue was necessary to the charged violations because, absent probable cause, Officer McCulloch had no grounds to initiate the traffic stop. Accordingly, Judge DeLuca's finding of probable cause in the civil infraction case precludes Pinckney from contesting probable cause in the instant case. Pinckney's false arrest and malicious prosecution claims must, therefore, be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the City's and Officer McCulloch's motion for partial summary judgment and dismiss Counts 5 and 9–12 of Pinckney's First Amended Complaint.

An Order consistent with this Opinion will be entered.


Dated: September 26, 2012           /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE